UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MICHIGAN

Al Qassimi Academy, and
Abd-Raof Al-Qawasmi,

    Plaintiffs,

v

Ismail Abuhaltam,

    Defendant.

Case No. 1:23-CV-289

Hon. Paul L. Maloney

---

Mohammed J. Zaher
Advanta Law PC
24300 Southfield Rd., Suite 210
Southfield, MI 48075
(248) 281-6299
lawyers@advantalaw.com
Attorneys for Plaintiff

Andrew J. Gerdes (P47593)
Andrew J. Gerdes, P.L.C.
416 N. Homer St., Suite 101
Lansing, MI 48912
(517) 853-1300
agerdes@capitalbankruptcy.net
Attorney for Defendant

---

**DEFENDANT'S BRIEF IN SUPPORT OF**
**MOTION FOR JUDGMENT ON THE PLEADINGS**

**[ORAL ARGUMENT REQUESTED]**

Defendant Ismail Abuhaltam ("Defendant"), by and through his attorneys, Andrew J. Gerdes, P.L.C., submits this his Brief in Support of Motion for Judgment on the Pleadings.

**BACKGROUND**

As the docket shows and this Court certainly recalls, this case has a bit of history. This case was initially filed solely by Al Qassimi Academy (the "Academy") and alleged two counts: (1) defamation and (2) intentional infliction of emotional distress. *See* Verified Complaint and Request for Preliminary and Permanent Injunction (Dkt. No. 1) (the "Initial Complaint"). Due to some missteps by Defendant, whose first language is not English and who initially appeared pro

se, his default was entered. Dkt. No. 19. Defendant's initial attempts to set aside the default were denied by this Court.

In response to this Court's Order to Show Cause (Dkt. No. 24), Plaintiff filed its motion for default judgment. See Plaintiff's Motion for Default Judgment (Dkt. No. 25). This Court denied the motion, finding numerous problems with Al Qassimi Academy's claims. Opinion and Order Denying Motion for Default Judgment (Dkt. No. 26).

With respect to Count I of the Initial Complaint (Defamation), this Court quoted Michigan law for the rule that defamation "<u>must be specifically pleaded</u>, including allegations with respect to the defamatory words, the connection between the plaintiff and the defamatory words, and the publication of the alleged defamatory words" and that a "plaintiff claiming defamation must plead a defamation claim with specificity <u>identifying the exact language</u> that the plaintiff alleges to be defamatory." *Id.*, pp. 4-5 (underline emphasis added; citations omitted).

Ultimately, this Court ruled: "<u>The factual allegations in the complaint do not obviously meet the pleading demands</u> under Michigan law for the Court to find Defendant liable for defamation. The <u>allegations of the complaint fail to provide the required specificity and context</u>. And, without the necessary specificity and context, the Court cannot determine whether the allegedly defamatory statements are actionable or are opinions protected by the First Amendment." *Id.*, pp. 5-6 (emphasis added).

With respect to Count II (Intentional Infliction of Emotional Distress), the Court noted that the plaintiff was a business entity and that "business entities cannot recover damages for emotional injuries because those entities do not experience emotional distress." *Id.*, p. 6. The Court again ruled: "The <u>factual allegations in the complaint do not obviously meet the pleading</u>

demands under Michigan law for the Court to find Defendant liable for intentional infliction of emotional distress. . . . [T]he allegations do not clearly arise to the level of 'utterly intolerable in a civilized society.'" *Id.*, p. 7 (emphasis added). And "more problematic" was the fact that the Al Qassimi Academy "is a corporate entity" and, as such, "it likely cannot obtain any relief associated with emotional distress."

Later, this Court set aside Defendant's default. Dkt. No. 66. Plaintiffs (now including the individual plaintiff Abd-Raof Al-Qawasmi) then filed their First Amended Complaint (the "Complaint"). Dkt. No. 76. Defendant filed his answer and defenses. Dkt. No. 86.

By this motion, Defendant moves for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).

## ARGUMENT

### I. Standards applicable to this motion.

#### A. Motions under Rule 12(c) apply the standard for Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

Pursuant to Fed. R. Civ. P. 12(c), "[a]fter the pleadings are closed, . . . a party may move for judgment on the pleadings." Defendant moves for judgment on the pleadings because the Complaint fails to state a claim upon which relief may be granted under Fed. R. Civ. P. 12(b)(6). "Where a Rule 12(b)(6) defense is raised pursuant to a [Rule] 12(c) motion, [the court] must apply the standard for a Rule 12(b)(6) motion . . . ." *Garcia v. City of Oakwood*, 99 F.3d 1138, *2 (6th Cir 1996) (table). See also Fed. R. Civ. P. 12(h)(2)(B) ("Failure to state a claim upon which relief can be granted . . . may be raised: . . . (B) by a motion under Rule 12(c) . . . .").

#### B. Standard under Rule 12(b)(6).

The Supreme Court, in its decisions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544

3

(2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), clarified the pleading standards under Rule 8 and corresponding standards that courts must apply to Rule 12(b)(6) motions to dismiss for failure to state a claim. In *Twombly*, the Court announced a "plausibility" standard, which it further explained in *Iqbal*.

> A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."
>
> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" . . . Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not "show[n]" – "that the pleader is entitled to relief."

*Iqbal*, 556 U.S. at 678-9 (emphasis added) (quoting *Twombly, supra*) (internal citations omitted).

A court "need not accept as true legal conclusions or unwarranted factual inferences." *In re Sofamor Danek Grp.*, 123 F.3d 394, 400 (6th Cir. 1997).

As explained below, none of the Plaintiffs' counts state plausible claims that satisfy the standards of Rule 8 in light of *Twombly* and *Iqbal*, and all should be dismissed pursuant to Rule 12(b)(6).

    **C.**    **Count I contains no "factual content" required to state a plausible claim for defamation.**

> To sustain a claim for defamation under Michigan law, a plaintiff must allege: 1) a false and defamatory statement concerning the plaintiff; 2) an unprivileged communication to a third party; 3) fault amounting to at least

4

>  negligence on the part of the publisher; and 4) either actionability of the statement irrespective of special harm (defamation per se) or the existence of special harm caused by publication (defamation per quod). *Rouch v. Enquirer & News of Battle Creek, Mich.*, 440 Mich. 238, 251; 487 N.W.2d 205, 211 (Mich. 1992). "The essentials of a cause of action for [defamation] must be stated *in the complaint*," including allegations as to the **exact language** that the plaintiff contends is defamatory, the connection of the defamatory words to the plaintiff where such words are not clear or are ambiguous, and the publication of the alleged defamatory words. *Ledl v. Quik Pik Food Stores, Inc.*, 133 Mich. App. 583, 589; 349 N.W.2d 529, 587 (Mich. App. 1984) (internal quotations omitted)

*Bhan v. Battle Creek Health Systems*, 579 Fed. App'x. 438, 445-446 (6th Cir. 2014) (bold emphasis added; italicized emphasis in original).

"Inherent in those requirements is that the allegations must set forth where, when, and to whom the alleged statements were published." *Id.*, 579 Fed. Appx. at 446.

Count I lacks any "factual content" that identifies the "exact language" that the Defendant allegedly published let alone "where, when, and to whom."

The bulk of the purportedly "factual" allegations in the Complaint (applicable to all counts) are contained in a section entitled "*Defendants' [sic] Defamatory Statements*" beginning in paragraphs 30-31. A review of those allegations shows that they are woefully deficient under Rule 8 and *Twombly/Iqbal*. In paragraphs 30-31, Plaintiffs allege that Defendant "has engaged in making slanderous and defamatory online postings" about Plaintiffs including:

- "calls for a riot and violence" against the academy (and the Al-Qasemi institutions)[1];

- "using fighting words and inciting violence against the Plaintiff's Board members, educational staff, and their families";

- "us[ing] computer graphic techniques . . . to create images . . . to mock, insult, defame, and slander" Plaintiff and its members;

---

[1] It is unclear what is meant by "Al-Qasemi institutions." To the extent the Plaintiffs are attempting to state claims in favor of persons who have not been made plaintiffs in this proceeding, Defendant objects to any such attempt.

5

- "accus[ing] Plaintiff and its members as 'agents' or 'proxies' of the government of Israel;

- "post[ing] slanderous and defamatory cartoon images of the Plaintiff's leaders and its members as 'pigs' and other 'pig-like' images (which allegedly "is the equivalent of an accusation of being heathens and disbelievers");

- "using pig-like images in depicting the leaders and officials of the Plaintiff, Defendant . . . is purposely defaming the Plaintiff enticing the extremists to target the Plaintiff and its leaders and officials with acts of violence as 'enemy heathen disbelievers'".

Complaint, ¶¶ 31(A-H), pp. 5-6.

Within Count I (Defamation), the Plaintiffs set forth additional equally non-specific and conclusory allegations including that Defendant engaged in the following:

- "Defendants [sic] published the remarks to third parties with knowledge of the falsity of the statements or in reckless disregard of their truth or falsity";

- "used at least Facebook . . . to . . . publish the defamatory statements described above";

- "accus[ed] plaintiff Academy with 'takfeer' repeatedly sharing footage and images on social media threatening and intimidating the Academy";

- "Using Messenger on Facebook . . . to invite citizens of Baqa AlGharbia and the region to join his group"[2];

- "Calls for a riot and violence against the Al-Qasemi Academy and Al-Qasemi institutions";

- "Calls for damaging and destroying Al-Qasemi Academy property and disabling Academy equipment and computers";

- "Defendant's communication accounts on social networks invite people through Facebook to commit acts of violence or sabotage against the Academy";

- Defendant allegedly knew that "Facebook and other social media websites" where he allegedly made these "defamatory" statements had members worldwide and in the Baqa Al-Gharbia region of Israel;

---

[2] Nothing further is alleged to identify this "group" or why inviting others to join it would qualify as defamation. So, these allegations are deficient on their face as alleging defamation. The significance of Defendant allegedly inviting "citizens of Baqa AlGharbia" to join Defendant's (unnamed) "group" as to the claim of defamation is also not explained.

- Defendant knew that Facebook had membership in the billions and that "the statements would be read and acted upon by hundreds of thousands of Facebook's members";

- Defendant knew that his statements "would cause a negative effect on plaintiff's [sic] Abd Al-Raof Al-Qawasmi and AL QASSIMI ACADEMY";

- Defendant intended that his statements would "dissuade and otherwise discourage student [sic] from attending there by reducing enrollment and income in plaintiff's [sic] AL QASSIMI ACADEMY"

- Defendant's publishing of his statements "tended to harm the reputation of Al Qassimi Academy's Board of Directors, educational staff, and its associates including plaintiff Abd Al-Raof Al-Qawasm Abd Al-Raof Al-Qawasmi and lowered plaintiff's reputation in the community."

Complaint, ¶¶ 41, 43-49, pp. 8-10.

While lengthy, these allegations are merely conclusory and wholly devoid of any actual statements purportedly made by Defendant, *i.e.*, the "exact words" that are required to allege a *plausible* claim for defamation.

The deficiencies in the defamation count allegations are manifest. What specific words did Defendant publish that amounted to "calls for a riot and violence" against the Academy? What were the specific "fighting words" he used (so the Court can determine if they even qualify as "fighting words") and how <u>specifically</u> did they "incit[e] violence" against the Academy's board? What were the "images" Defendant created that were intended to "mock, insult, defame and slander" Plaintiff, and how, specifically, were they defamatory?[3] Where are the graphics showing the "pigs" and "pig-like" images depicting the Plaintiffs that are allegedly defamatory? How, specifically, did Defendant call for damage and destroying the Academy's property and disabling its computers? What words did he use to invite others to commit acts of violence

---

[3] Of course, by itself creating "images" that "mock" or "insult" another are not defamatory, but are absolutely protected by the First Amendment. As Plaintiffs themselves correctly stated, "this case has profound First Amendment implications." Complaint, ¶ 3.

against or sabotage the Academy? How did Defendant know that his statements "would be acted on by hundreds of thousands" of people or would cause a negative effect on the Plaintiffs or dissuade and discourage others from attending the Academy? How did his statements lower plaintiff's reputation in the community?

To all these the Court will note the further defect that there are no facts as to "when, where, and to whom" any such statements were made, which are essential to stating a claim for defamation under Michigan law. Without such details, accompanied by the "exact language" allegedly used by Defendant, there is zero factual support for the Plaintiffs' defamation claim. Plaintiffs' repeated incantations that these (unspecified) statements supposedly were "defamatory" amounts to nothing more than the "formulaic recitation" and "threadbare recitals" of a defamation claim which are insufficient to state a claim for relief.

Accordingly, the Plaintiffs' defamation claim (Count I) should be dismissed for failure to state a claim upon which relief can be granted.

### D. Count II contains no "factual content" required to state a plausible claim for false-light invasion of privacy.

Count II of the Complaint is entitled "FALSE LIGHT AGAINST DEFENDANT ABUHALTAM." Although it is not entirely clear, Defendant assumes that this count attempts to state a claim for false-light invasion of privacy.

"In order to maintain an action for false-light invasion of privacy, a plaintiff must show that the defendant broadcast to the public in general, or to a large number of people, information that was unreasonable and highly objectionable by attributing to the plaintiff characteristics, conduct, or beliefs that were false and place the plaintiff in a false position." *Derderian v. Genesys Health Care Systems.*, 689 N.W.2d 145, 159 (Mich. App. 2004) (quoting *Porter v. Royal Oak*, 542 N.W.2d 906 (Mich. App. 1995)).

In addition to incorporating the general allegations of paragraphs 30-32 discussed above, Count II alleges the following:

- That Defendant "published the defamatory statements as specifically described above . . . and the statements showed plaintiff in a false light";

- Defendant's "statements were understood by hundreds if not thousands of persons . . . to mean, *inter alia*, that plaintiff[s] are 'agents' and 'proxies' of the government of Israel, thereby endangering their lives and property";

- That Defendant knew that the publication of the "defamatory statements would create a false impression."

Complaint, ¶¶ 56-63.

Thus, Count II raises no new factual allegations beyond those raised in the general allegations of paragraphs 30-32. And the deficiencies in those allegations with respect to failing to state a claim for defamation apply equally to show that they fail to state a claim for false-light invasion of Plaintiffs' privacy. Without alleging the specific statements that Defendant allegedly published (and showing how they were false), Plaintiffs have not stated a claim for false-light invasion of privacy. There are literally no facts that state a plausible claim for relief under this theory. Count II must also be dismissed for failure to state a claim upon which relief can be granted under *Twombly/Iqbal*.

   **E. Count III contains no "factual content" required to state a plausible claim for intentional infliction of emotional distress.**

> "'To establish a prima facie claim of intentional infliction of emotional distress, the plaintiff must present evidence of (1) the defendant's extreme and outrageous conduct, (2) the defendant's intent or recklessness, (3) causation, and (4) the severe emotional distress of the plaintiff.'" *Dalley v. Dykema Gossett PLLC*, 287 Mich. App. 296, 321; 788 N.W.2d 679 (2010) (citation omitted). "Liability for the intentional infliction of emotional distress has been found only where the conduct complained of has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Doe v. Mills*, 212 Mich. App. 73, 91; 536 N.W.2d 824 (1995). Accordingly, "[l]iability does not extend to mere insults, indignities, threats, annoyances, petty oppressions,

9

or other trivialities." *Id.*

*Lucas v. Awaad*, 830 N.W.2d. 141, 150 (Mich. App. 2013).

In attempting to state a claim for intentional infliction of emotional distress in Count III, Plaintiffs rely solely on the conclusory allegations addressed in the discussion of Counts I and II above, but do not set forth any new <u>factual</u> allegations. Plaintiffs assert that those conclusory allegations establish that Defendant's "conduct was outrageous, extreme, and of such character as not to be tolerated by a civil society" and "was for an ulterior motive or purpose." Complaint, ¶¶ 69-70.

Obviously, if those conclusory allegations were insufficient to state claims for defamation or false-light invasion of privacy under Counts I and II, as discussed above, because no actual statements (including the what, when and where) were alleged, then they likewise are insufficient to allege a plausible claim for intentional infliction of emotional distress. Plaintiffs have literally offered no factual support from which it can be said that Defendant's conduct was "extreme and outrageous" or so atrocious and utterly intolerable in a civilized society. Accordingly, Count III should also be dismissed for failure to state a claim upon which relief can be granted.

### F. Count IV contains no "factual content" required to state a plausible claim for negligent infliction of emotional distress.

Plaintiffs' claim for negligent infliction of emotional distress (Count IV) also relies solely on the previously discussed conclusory and deficient allegations. No new facts are alleged.

"The elements of a negligent infliction of emotional distress claim are: (1) 'the injury threatened or inflicted on the third person must be a serious one, of a nature to cause severe mental disturbance to the plaintiff'; (2) the shock must result in actual

physical harm; (3) the plaintiff must be a member of the immediate family, or at least a parent, child, husband or wife; and (4) the plaintiff must actually be present at the time of the accident or at least suffer shock 'fairly contemporaneous' with the accident." *Pederson v. Huron Clinton Metropolitan Authority*, 2015 WL 213149, *3, n. 2 (Mich. App.).

Count IV should be dismissed for at least two reasons. First, as the Michigan Court of Appeals has explained "the tort of negligent infliction of emotional distress is inapplicable where a plaintiff claims to have been injured by publication of false statements about the plaintiff. . . . [W]e decline to apply the tort of negligent infliction of emotional distress beyond the situation where a plaintiff witnesses negligent injury to a third person and suffers mental disturbance as a result." *Duran v. Detroit News, Inc.*, 504 N.W.2d 715, 719-720 (Mich. App. 1993).

Given that virtually all of Plaintiffs' allegations are based on Defendant's alleged publication of false or defamatory statements about them, *Duran* compels that Count IV be dismissed for failure to state a claim for negligent infliction of emotional distress. There are no allegations that the individual plaintiff witnessed an injury to a family member caused by the Defendant.

Second, the same lack of factual support for the prior counts is equally fatal to this count. There is no factual support that allows the Court to find that the individual plaintiff has stated a plausible claim for relief under *Twombly*/*Iqbal*.

### G. Count V fails to state a claim for relief under the Federal Computer Fraud and Abuse Act.

Plaintiffs' Count V, entitled "Violation of the Federal Computer Fraud and Abuse Act," which cites 18 U.S.C. § 1030, fails to state a claim upon which relief can be granted

under *Twombly/Iqbal* and for the failure to allege even the requisite elements of any possible claim under that statute. In support of Count V, Plaintiffs allege as follows:

- "Defendant abused his use of the computer, its software, and online platforms such as Facebook, to fraudulently and falsely depict Plaintiff as 'agents' and 'proxies' of the government of Israel and depict Plaintiffs as vile non-humans thereby committing fraud."

- "Defendant [sic] conduct was intentional."

- "As a direct and proximate result of Defendant's conduct, Plaintiff has been damaged and continues to be damaged. Because the conspiracy was willful and malicious and in conscious disregard of Plaintiff's rights, Plaintiff is entitled to punitive damages."

Complaint, ¶¶ 81-83.[4]

These allegations do not state a claim upon which relief can be granted under the Federal Computer Fraud and Abuse Act (the "FCFAA") for at least two reasons: (1) the allegations do not allege even the elements of a claim under the FCFAA; and (2) they suffer from the same defects under *Twombly/Iqbal* identified with respect to the preceding counts.

### 1. Count V does not allege any conduct proscribed by the FCFAA.

The FCFAA proscribes a number of actions with respect to using or accessing computers, but the allegations of Count V do not fall within any of the FCFAA's terms. The FCFAA employs the definition of a "protected computer" which underlies much of what the statute prohibits. A "protected computer" means a computer:

> (A) exclusively for use of a financial institution or the United States Government, or, in the case of a computer not exclusively for such use, used by or for a financial institution or the United States Government and the conduct constituting the offense affects that use by or for the financial institution or

---

[4] Plaintiffs also incorporate all the preceding allegations, which have been discussed above. No new factual allegations are added that apply to Count V alone.

      Government;

(B) which is used in or affecting interstate or foreign commerce or communication, including a computer located outside the United States that is used in a manner that affects interstate or foreign commerce or communication of the United States; or

(C) that

    (i) is part of a voting system; and

        (I) is used for the management, support, or administration of a Federal election; or

        (II) has moved in or otherwise affects interstate or foreign commerce.

18 U.S.C. § 1030(e)(2).

A review of each type of conduct proscribed by the FCFAA compared with the allegations of Count V shows that it fails to state a claim under the FCFAA. At bottom, Count V alleges that Defendant used Facebook or other (unspecified) social media sites to post (unspecified) allegedly defamatory comments about Plaintiffs. The FCFAA simply does not address such conduct. Because the Complaint does not specifically cite to any particular subsection of the FCFAA that Defendant allegedly violated, Defendant will address each subsection that describes proscribed conduct and show that none of those subsections is implicated.

Section 1030(a)(1) imposes liability on whoever "having knowingly accessed a computer without authorization . . . and . . . having obtained information that has been determined by the United States Government . . . to require protection against unauthorized disclosure for reasons of national defense or foreign relations . . . ." Count V contains no allegations that Defendant accessed a computer without authorization, let alone that he obtained information that the federal government determined required

protection from unauthorized disclosure.

Section 1030(a)(2) imposes liability on whoever "intentionally accesses a computer without authorization . . . and thereby obtains – (A) information contained in a financial record of a financial institution, or of a card issuer . . . or contained in a file of a consumer reporting agency on a consumer . . .; (B) information from any department or agency of the United States; or (C) information from any protected computer." Likewise, Count V contains no allegations that Defendant accessed a computer without authorization or that he obtained a consumer's financial information or that of the federal government or that was on a "protected computer."

Section 1030(a)(3) imposes liability on whoever "intentionally, without authorization to access any nonpublic computer of a department or agency of the United States accesses such a computer of that department or agency that is exclusively for use of the Government of the United States or, in the case of a computer not exclusively for such use, is used by or for the Government of the United States and such conduct affects that use by or for the Government of the United States." Count V contains no allegations about any computers of or that are used by the federal government, let alone that Defendant accessed such computers without authorization.

Section 1030(a)(4) imposes liability on whoever "knowingly and with intent to defraud, accesses a protected computer without authorization, . . . and by means of such conduct furthers the intended fraud and obtains anything of value . . . ." Count V contains no allegations about any "protected computer" or that Defendant accessed such a computer "with intent to defraud."

Section 1030(a)(5) imposes liability on whoever "(A) knowingly causes the

14

transmission of a program . . . and as a result . . . intentionally causes damage . . . to a protected computer; (B) intentionally accesses a protected computer . . . and as a result . . . recklessly causes damage; or (C) intentionally accesses a protected computer . . . and as a result . . . causes damage and loss." Count V contains no allegations related to any "protected computer," let alone that Defendant transmitted a program and intentionally caused damage to such a computer, or intentionally accessed such a computer and recklessly or otherwise caused damage and loss.

Section 1030(a)(6) imposes liability on whoever "knowingly and with intent to defraud traffics . . . in any password or similar information through which a computer may be accessed without authorization, if – (A) such trafficking affects interstate or foreign commerce; or (B) such computer is used by or for the Government of the United States." Count V contains no allegations that Defendant engaged in any "trafficking" of password or other computer access information, let alone in interstate/foreign commerce or with respect to a computer of the United States.

Section 1030(a)(7) imposes liability on whoever "with intent to extort from any person any money or other thing of value, transmits in interstate or foreign commerce any communication containing any – (A) threat to cause damage to a protected computer; (B) threat to obtain information from a protected computer without authorization . . .; or (C) demand or request for money or other thing of value in relation to damage to a protected computer." This subsection involves, at a minimum, accessing a "protected computer." Count V contains no allegations with respect to any "protected computer." Neither does Count V contain any allegations with respect to Defendant's threats to damage such a computer, obtain information from such a computer, or demand money in relation to

15

damage a protected computer.

In summary, Count V does not allege that Defendant engaged in any of the conduct proscribed by 18 U.S.C. § 1030(a). Thus, Count V should be dismissed for failure to state a claim upon which relief can be granted.

> **2. Even if Count V is deemed to contain the formulaic recitation of the elements of a claim under the FCFAA, it does not contain the required "factual content" to state a plausible claim for relief.**

If the Court finds that Count V alleges the *elements* of at least one claim under 18 U.S.C. § 1030(a), it should nonetheless conclude that any such claim is deficient under the *Twombly/Iqbal* standards discussed at length above. Count V contains no <u>factual allegations</u> regarding, among other things, the identify of any "protected computer" that Defendant accessed, when and how Defendant intentionally accessed it, that Defendant accessed the information contained in a consumer reporting agency file, that Defendant trafficked in any password or computer access information, or extorted any money by threatening to damage a protected computer or to obtain information from one. Count V fails to state a claim upon which relief can be granted under *Twombly/Iqbal*.

All of the counts of the Complaint contain nothing more than the "formulaic recitation" and "threadbare recitals" of the elements of (some) claims, but no "factual content" that is required by Rule 8 and *Twombly/Iqbal*. Accordingly, all should be dismissed.

## II. <u>Relief requested.</u>

Plaintiffs' Complaint fails to state any claims for relief under the applicable standards for Rules 12(b)(6) and (c) and should be dismissed. The question that next arises is whether such dismissal should be with prejudice or without prejudice (with leave to amend). Defendant assumes that Plaintiffs will argue that any dismissal should be

without prejudice and that they be granted leave to amend their Complaint to (once again) attempt to state valid claims.

Defendant submits that dismissal should be <u>with prejudice</u> and without leave to amend. The Court will recall that it *sua sponte* identified numerous deficiencies in Plaintiff Al Qassimi Academy's Initial Complaint when that party sought entry of a default judgment. Specifically, with respect to the defamation count of the Initial Complaint, this Court ruled that "The factual allegations in the complaint do not obviously meet the <u>pleading</u> demands under Michigan law for the Court to find Defendant liable for defamation. <u>The allegations of the complaint fail to provide the required specificity and context</u>." (emphasis added).

With respect to the count of the Initial Complaint alleging intentional infliction of emotional distress, this Court likewise ruled: "The factual allegations in the complaint do not obviously meet the pleadings demands under Michigan law for the Court to find Defendant liable for intentional infliction of emotional distress. . . . [T]he allegations do not clearly arise to the level of 'utterly intolerable in a civilized society.'"

This Court clearly put Plaintiffs on notice that the Initial Complaint was defective for <u>failure to allege specific facts</u> in support of the original theories. Yet, when filing the current Complaint (the First Amended Complaint), Plaintiffs did nothing to correct those defects. They added some new theories, but those suffer from the same lack of "factual support" needed to state "plausible" claims for relief under *Twombly/Iqbal*.

It is clear that Plaintiffs are hoping to overcome that problem by racing to conduct discovery from Defendant in the hope of finding factual support to allow them to state

17

any claim for relief and avoid dismissal.[5] But the Supreme Court rejected this proverbial "cart before the horse" argument that a plaintiff should be allowed to conduct discovery in the hopes of finding factual support for its claims: "The question presented by a motion to dismiss for insufficient pleadings does not turn on the controls placed on the discovery process. *Twombly, supra,* at 559. And because [plaintiff's] complaint is deficient under Rule 8, <u>he is not entitled to discovery</u>, cabined or otherwise." *Iqbal*, 556 U.S. at 664–65 (emphasis added).

Plaintiffs have now ***twice*** failed to plead proper claims for relief, the second time after this Court gave clear warning about the defects in the Initial Complaint regarding lack of factual support. That Plaintiffs did not heed this Court's warnings should preclude them from getting a third try to get it right. This Court should not further indulge Plaintiffs' quest to subject Defendant to the ruinous cost of extended discovery where they cannot state plausible claims for relief. The Complaint should be dismissed <u>with prejudice</u>, *i.e.*, without leave to amend.

[remainder of page left blank intentionally]

---

[5] In response to the undersigned seeking Plaintiffs' counsel's concurrence in this motion, Plaintiffs responded by serving a first set of interrogatories and noticing Defendant's deposition.

**PRAYER FOR RELIEF**

For the foregoing reasons, Defendant Ismail Abuhaltam respectfully requests that this Court grant his motion, dismiss Plaintiffs' Complaint with prejudice, and grant him such other and further relief to which he is entitled.

        Respectfully submitted,

        ANDREW J. GERDES, P.L.C.
        Attorneys for Defendant

Dated: July 29, 2025        By: /s/ Andrew J. Gerdes
        Andrew J. Gerdes (P47593)
        Business Address:
        416 N. Homer St., Suite 101
        Lansing, MI 48912
        (517) 853-1300
        agerdes@capitalbankruptcy.net

**Certificate of Compliance with Brief Length Requirements**

1.  This document complies with the word limit of W.D. Mich. LCivR 7.2(b)(i) because, excluding the parts of the document exempted by that rule,

    X   this documents contains 5,126 words.

    X   this document has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in 12-point Times New Roman.

/s/ Andrew J. Gerdes                    Date: July 29, 2025
Andrew J. Gerdes
416 N. Homer St., Suite 101
Lansing, MI 48912
(517) 853-1300